**JERSEY CITY DRY DOCKS CO. v. O'BRIEN BROS., Inc.**

No. 16694.

District Court, E. D. New York.

Aug. 7, 1943.

Mahar & Mason and Frank C. Mason, both of New York City, for libellant.

Foley & Martin and Christopher E. Heckman, all of New York City, for respondent O'Brien Bros., Inc.

Burlingham, Veeder, Clark & Hupper and Frederic Conger, all of New York City, for Tice Towing Line, Inc., claimant of Tug Cardinal.

CAMPBELL, District Judge.

The tug Cardinal was impleaded under the 56th Rule in Admiralty, 28 U.S.C.A. § 723, on the petition of the respondent O'Brien Brothers, Inc.

Prior to June 1, 1942, the libellant and respondent entered into a contract for towage wherein and whereby, for a consideration, the respondent contracted to have libellant's Dry Dock No. 1 towed from one point in the yard located at the foot of Henderson Street, Jersey City, to the permanent berth of the Dry Dock at the east end of the yard.

The respondent on June 11, 1942 commenced the performance of the contract using its own tug the Joseph J. O'Brien, and the tug Cardinal, owned by Tice Towing Line, Inc., claimant of the respondent-impleaded, which relieved the tug Lloyd Dalzell.

The tug Joseph J. O'Brien put a line on the bow, and the tug Cardinal, which took up her position on the outside stern, put a line on a cleat inside the wing on the stern of the Dry Dock No. 1, to pull the stern out, but did not put out a line to enable her to go astern with the Dry Dock No. 1, without shifting her line.

The Superintendent of the libellant testified that he called the Captains of the two tugs onto the dock before the operation started, and warned them that they should pull the Dry Dock out, into the stream away from the dock, in order to clear any obstructions along the pier. He did not positively identify the men to whom he spoke, but, said the Captain of the Cardinal, was, he believed, named Kelly, and that was the name of the Captain of the Cardinal, who denied receiving such suggestion. The Captain of the tug Joseph J. O'Brien did not take the stand and, therefore, there is no denial on his part.

I assume such suggestion was made.

The Captain of the Joseph J. O'Brien did not give any instructions to the Captain of the Cardinal. The Captain of the Cardinal said he did not need any instructions as he knew what he was expected to do. The Captain of the Cardinal could not see the dock as the Dry Dock they were shifting was between the Cardinal and the dock.

The Captain of the Cardinal did not put any look-out on the Dry Dock No. 1 to warn of the approach of the Dry Dock to the dock.

The lines of the Dry Dock No. 1 to the dock were cast off, the Captain of the Joseph J. O'Brien gave a hand signal to go ahead, and started ahead, and the Cardinal also went ahead. In going ahead, and pulling the head of the Dry Dock No. 1 out the Joseph J. O'Brien would cause the stern of the Dry Dock to swing in toward the dock, and it was to prevent this that the services of the Cardinal were employed.

The tugs went ahead at slow speed for three quarters of a minute to a minute, when the Captain of the Joseph J. O'Brien signaled by hand to the Cardinal to stop her engine, and she stopped them. The Dry Dock No. 1, at that time, was moving ahead toward the east and away from the dock. The Captain of the Joseph J. O'Brien again signaled by hand to go ahead, and both tugs went ahead, and the westerly end of the Dry Dock No. 1, which I described as the stern, again came out. This was repeated.

The Captain of the tug Joseph J. O'Brien signaled to the Cardinal to stop, and she stopped for about three quarters of a minute, then, without any signal, she went ahead, when a man on the Dry Dock No. 1 hollered to the Cardinal to go back. The Superintendent of the libellant, who was on the dock, called to the man on the Dry

Dock No. 1, who in turn called to the Cardinal, as described. The Dry Dock No. 1 was then sagging in toward the dock. When the man on the dock called to the Cardinal to go back, the Joseph J. O'Brien did the only thing she could do, stopped.

The Cardinal was so made fast to the Dry Dock by a line, that had she backed on that line she would have backed hard against the dock, therefore, she shifted the line to the Dry Dock from the stem ahead of the tug, to the tug's starboard side bitt, so as to back straight, or if possible a little away from the dock.

The Cardinal reversed her engine, and was just going astern when the Dry Dock No. 1 struck the dock, one of the spuds of the Dry Dock No. 1 struck one of the crabs protruding out from the side of the dock, inflicting damage on the Dry Dock No. 1.

As the work was being performed the Joseph J. O'Brien was the pulling tug, and the Cardinal was the rudder tug.

Generally it is the duty of the Master of the pulling tug to instruct the Master of the rudder tug, as to what she is to do, but that was unnecessary in the instant suit, as the Master of the Cardinal, the rudder tug, testified that he knew what he was expected to do.

It was not the duty of the Captain of the pulling tug, the Joseph J. O'Brien, to supervise the making fast of the line from the tug Cardinal to Dry Dock No. 1, but it was the duty of the Captain of the tug Cardinal to see that she was so made fast, as to be able to keep the Dry Dock No. 1 from striking the dock, and that included so making her fast that she could go ahead or astern as might be required. This she did not do, as it was necessary for her when called upon to go astern to shift her line, and before she was able to accomplish the manoeuver of going astern the Dry Dock No. 1 came into contact with the dock, this constituted a fault.

The tug Cardinal did not go astern on a signal from the Joseph J. O'Brien.

The Captain of the Cardinal chose the place where the Cardinal was made fast, and in so doing put her where he could not see the dock because of the Dry Dock No. 1 being between the Cardinal and the dock, and he should have posted a lookout on the Dry Dock No. 1 to appraise him if the Dry Dock No. 1 fell in too close to the dock; this he failed to do, and such failure constituted a fault.

There was no fault in the navigation of the Joseph J. O'Brien, nor in the signals given by her Captain, by hand, to the Cardinal, and this is true whether such hand motions of the Captain be considered as signals, or simply as indications of engine movements of the Joseph J. O'Brien.

We must not lose sight of the fact that the respondent called no witness to deny the testimony on behalf of the Cardinal that they were signals, and therefore, I accept that to be the fact.

The Superintendent of the libellant did not assume to order the method to be pursued in removing the Dry Dock No. 1, but simply suggested the necessity of taking the Dry Dock No. 1 well away from the dock, and the crabs extending therefrom, and called out to go back when he saw the Dry Dock No. 1 was about to strike the dock.

The libellant was without fault or blame.

The tug Cardinal was wholly and solely at fault and to blame, and primarily liable.

The respondent O'Brien Brothers, Inc., being under contract with libellant for the furnishing of the tugs for the shifting and having furnished the Cardinal, are secondarily liable.

A decree should be entered in favor of the libellant against the tug Cardinal impleaded, as primarily liable, and against the respondent O'Brien Brothers, Inc., as secondarily liable, with costs, and the usual order of reference.